UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CENTRAL LABORERS' PENSION, WELFARE AND ANNUITY FUNDS,<br><br>   Plaintiff,<br><br>   v.<br><br>W.C. BEISER CONCRETE COMPANY, INC. and KENNETH BEEMER, *individually*,<br><br>   Defendants. | Case No. 10-cv-611-JPG-PMF |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff Central Laborers' Pension, Welfare and Annuity Funds' ("Central") Motion for Default Judgment (Doc. 9) and Memorandum (Doc. 10) in support thereof. Specifically, having obtained Entry of Default (Doc. 8) against Defendants W.C. Beiser Concrete Company, Inc. and Kenneth Beemer (individually referred to as "W.C. Beiser" and "Beemer" respectively and collectively referred to as "Defendants") on November 16, 2010, Central now seeks default judgment against Defendants. W.C. Beiser did not respond thereto. Meanwhile, Beemer responded by filing a Motion to Set Aside Entry of Default and Motion to Dismiss (Doc. 11); Central filed a Response (Doc. 13) thereto, to which Beemer filed a Reply (Doc. 14).[1]

---

[1] Because Beemer described the exceptional circumstances that warrant the filing of his reply, it is obvious that he is somewhat familiar with the Court's Local Rules. S.D. Ill. L. R. 7.1(c) & (g) ("Reply briefs are not favored and should be filed only in exceptional circumstances. The party filing the reply brief shall state the exceptional circumstances.") (emphasis omitted). It is therefore a shame that he blatantly disregarded those very same rules by filing a 9-page reply. S.D. Ill. L. R. 7.1(d) ("Reply briefs shall not exceed 5 pages. Requests for additional pages are not allowed."). The Court admonishes Beemer to adhere to *all* of the Court's Local Rules in the future lest his filings be wholly or partially stricken.

The motions of Central and Beemer shall be addressed in kind.

## I. Motion for Default Judgment as to W.C. Beiser

Ordinarily, a default judgment should not be entered against one defendant until the matter has been resolved as to all defendants. *Home Ins. Co. of Ill. v. Adco Oil Co.*, 154 F.3d 739, 741 (7th Cir. 1998) (citing *Frow v. De La Vega*, 82 U.S. (15 Wall.) 552 (1872)). Because this litigation will be continuing against Beemer for reasons discussed *infra*, the Court denies default judgment against W.C. Beiser as premature.

## II. Beemer's Motion to Set Aside Entry of Default

Pursuant to Federal Rule of Civil Procedure 55(c), "[t]he court may set aside an entry of default for good cause[.]" For instance, if damages are disproportionate to the wrong, they may "afford good *cause* for judicial action, even though there is no good *excuse* for the defendant's inattention to the case." *Sims v. EGA Prods., Inc.*, 475 F.3d 865, 868 (7th Cir. 2007) (emphasis in original). Binding case law has elaborated upon Rule 55(c) by requiring vacatur if the defendant shows (1) good cause for his default; (2) quick action to correct it; and (3) a meritorious defense to the complaint. *Pretzel & Stouffer v. Imperial Adjusters, Inc.*, 28 F.3d 42, 45 (7th Cir. 1994); *O'Brien v. R.J. O'Brien & Assocs.*, 998 F.2d 1394, 1401 (7th Cir. 1993); *United States v. Di Mucci*, 879 F.2d 1488, 1495 (7th Cir. 1989).

The first consideration — good cause for the defendant's default — may consist of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1);[2] *Tate v.*

---

[2] The standard for setting aside an entry of default under Rule 55(c) is essentially the same, albeit less stringent, than that governing vacatur of default judgment under Rule 60(b). *See Sims*, 475 F.3d at 868. *Davis v. Hutchins*, 321 F.3d 641, 646 n.2 (7th Cir. 2003); *Chrysler Credit Corp. v. Macino*, 710 F.2d 363, 367 (7th Cir. 1983).

*Riverboat Servs., Inc.*, 305 F. Supp. 2d 916, 919 (N.D. Ind. 2004). The second consideration — quick action to correct — looks at the time that passed between entry of default and the defendant's motion, yet it ultimately turns on the particular situation presented. *See Jones v. Phipps*, 39 F.3d 158, 165 (7th Cir. 1994). Factors that define such a situation are the litigant's reason for delay, his ability to learn about the grounds for judgment earlier, and the extent of prejudice suffered by the party seeking default. *Tate*, 305 F. Supp. 2d at 923 (relying upon *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 610 (7th Cir. 1986)). Finally, the third consideration — the existence of a meritorious defense — does not necessarily require a winning defense but instead calls for "one which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis." *Jones*, 39 F.3d at 165. In other words, a general denial or a bare legal conclusion that a defense exists will not suffice. *See Pretzel & Stouffer*, 28 F.3d at 46.

Here, there is good cause to set aside the default entered against Beemer. First, Beemer has demonstrated good cause for his default; namely, he did not know that he had been sued as a defendant in his individual capacity. This is perhaps best evidenced by the 16-page, operative Complaint (Doc. 2), which only refers to Beemer "individually" three times and does so in an unnecessarily confusing manner.[3] Count II, which is asserted against Beemer in his individual capacity for alleged violation of §1145 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, actually refers to "James

---

[3]Because Central's complaint *does* mention Beemer in his individual capacity, the Court finds Beemer's assertion that "there was *no* reason for him to understand that the Plaintiffs would contend that he should be personally liable for this corporate debt" to be somewhat disingenuous. Doc. 14, p. 2 (emphasis added).

Quirin" in its opening paragraph and only refers to W.C. Beiser in its prayer for relief. While these references are most likely the result of typographical errors, Central should not be allowed to proceed under the path of default against Beemer individually when it could not even properly refer to him in its complaint. More importantly, Count II centers around the Restated Agreement and Declaration of Trust of the Central Laborers' Pension Fund ("Restated Trust") (Doc. 2-4), which, for reasons discussed *infra*, Beemer signed in his official capacity and thought did not expose him to personal liability. This constitutes excusable neglect and possible surprise that represents good cause for allowing default to enter.

Next, Beemer took quick action to correct the entry of default against him. Although Beemer waited nearly four months to vacate entry of default, the Court's analysis of this factor turns on the particular situation presented. Like the complaint, Central's Motion for Entry of Default (Doc. 7) merely mentions Beemer "individually" in passing, namely once in the motion's case caption. And, perhaps more notably, the Clerk of Court's entry of default does not once refer to the individual liability of Beemer. When Central eventually filed its motion for default judgment, which repeatedly referred to Beemer individually and cited specific damages, Beemer took just four days in getting his motion to vacate on file.

Looking at this chronology as a whole, it is clear that Beemer's failure to timely file the answer was inadvertent and the result of a misunderstanding, not the type of willful refusal to follow court rules that justifies refusing to vacate entry of default. *See Davis v. Hutchins*, 321 F.3d 641, 646 (7th Cir. 2003). Furthermore, Beemer's behavior does not reflect the kind of repeated delinquencies that justified denying a motion to vacate default in

4

*Pretzel & Stouffer*, where counsel missed the deadline to answer, failed to move for leave to file the answer out of time, failed to provide a copy of the answer to opposing counsel, and failed to appear at a status hearing without a valid excuse. *See Pretzel & Stouffer*, 28 F.3d at 45-46. And, notably, Central has not alleged that it suffered prejudice from Beemer's delay as contemplated by *Tate*. Being fully advised of the premises, the Court finds that Beemer took quick action to correct the Clerk's entry of default.

Beemer wins the day on the Court's third and final consideration due to the existence of a meritorious defense. Beemer's primary defense is that he cannot be personally liable under the Restated Trust because he signed said agreement as president of W.C. Beiser. Indeed, if Beemer did not obligate himself personally under the agreement, he cannot be held personally liable thereunder. *See infra* p. 7-8.

As evidence that the potential liability of Beemer would be limited to his representative capacity, Beemer touts the parties' "Participation Agreement" (Doc. 2-2) and Exhibit 2 to Central's complaint, both of which Beemer signed under the "Employer" heading as "President" (the Participation Agreement even included Beemer's "Authorized Signature").[4] At this time, it is impossible to determine the likelihood of success of this defense, but it is obvious the defense carries some factual and legal support and casts serious doubt on the propriety of the entry of default against Beemer.[5] This is all that is required of a

---

[4]The first five pages of the six-page Exhibit 2 are conspicuously absent from the record.

[5]And, while the Restated Trust does reference the potential personal liability of Beemer, he has made and will undoubtedly continue to assert several defenses thereto. *See infra* p. 8-9. Only time will tell whether they too prove meritorious.

meritorious defense under *Jones*.

Because Beemer has demonstrated good cause for his default, quick action to correct it, and a meritorious defense to Central's complaint, the Court can and will set aside the entry of default entered against him. This obviously moots Central's request for default judgment against Beemer.

### III. Beemer's Motion to Dismiss

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Beemer moves to dismiss Central's action against him for failure to state a claim upon which relief can be granted.

#### A. Motions to Dismiss Generally

The federal system of notice pleading requires only that the plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Therefore, the complaint need not allege detailed facts, *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007); likewise, "a 'complaint need not spell out every element of a legal theory' to provide notice." *Scott v. City of Chi.*, 195 F.3d 950, 951 (7th Cir. 1999) (quoting *Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 261 (7th Cir. 1998)).

In order to provide fair notice of the grounds for its claim, however, the plaintiff must allege sufficient facts "to raise a right to relief above the speculative level." *Pisciotta*, 499 F.3d at 633 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must offer "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id*. The plaintiff's pleading obligation is to avoid factual allegations "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under [Federal] Rule [of Civil Procedure] 8." *Airborne Beepers &*

*Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). Nevertheless, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 550 U.S. at 563 n.8.

      **B.**      **Personal Liability of a Corporate Director under Section 1445 of ERISA**

In its response to Beemer's dismissal motion, Central cites a great deal of non-binding precedent that allegedly imputes personal liability to Beemer. Central, however, cites only two cases that bind, and therefore concern, this Court. As such, those cases serve as the focal point of the Court's analysis.

"Corporate officers who are not parties to a pension plan or a collective bargaining agreement requiring contributions to a pension plan are personally liable for pension contributions only to the extent they are liable for general corporate debts under state corporate law." *Plumbers' Pension Fund, Local 130 v. Niedrich*, 891 F.2d 1297, 1302 (7th Cir. 1989); *Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186, 1194 (7th Cir. 1989). In the context of the claims arising under ERISA § 1445 against an Illinois corporation's director or officer, this typically means that "unless the corporation is acting for and an alter ego of the individual or there exist facts that warrant piercing the corporate veil, the individual will not be held liable for the corporation's obligations . . . ." *Niedrich*, at 1299-1300 (collecting cases and indicating agreement therewith). That said, one way in which a corporation's chief officer may incur liability is if he contractually agreed to accept responsibility for his company's actions (or lack thereof), thereby becoming an "employer[] who is obligated to make contributions." *See* 29 U.S.C. § 1145 (2006); *Sullivan v. Cox*, 78 F.3d 322, 325 (7th

7

Cir. 1996). Indeed, the Court has seen this very argument meet with success. *Trs. of Cent. Laborers' Pension, Welfare & Annuity Funds v. Allen*, No. 04-cv-4155-JPG, 2007 WL 433543 (S.D. Ill. Feb. 6, 2007) (finding corporate director personally liable after one-day bench trial); *Trs. of Cent. Laborers' Pension, Welfare & Annuity Funds v. Acorn Indus.*, No. 05-cv-4123-JPG, 2006 WL 120275 (S.D. Ill. Jan. 17, 2006) (denying corporate president's motion to dismiss).

Here, Central has not alleged that W.C. Beiser is the alter ego of Beemer or that the corporate veil of the company can somehow be pierced. Consequently, the only way in which Beemer can be individually liable for his company's failure to contribute pension funds is if he contractually agreed to accept responsibility in his personal capacity.

Assuming Beemer contractually agreed to the terms of the Restated Trust and that the Restated Trust was in effect when the underlying events occurred,[6] the *only* portion of the Restated Trust that possibly implicates Beemer personally states, in pertinent part, as follows:

> Where an audit discloses a difference between hours actually worked by an employee and hours reported to the Trust by his Employer and where such audit discloses any willful violation of any requirements of this Trust Agreement . . . , those officers and directors of such Employer, if a corporation, who supervised the completion of report forms, signed report forms or can be determined to have had personal knowledge of such conduct, shall be *personally liable* for any underpayment or other pecuniary loss to the Fund as a result of such conduct.

Doc. 2-4, p. 22 (emphasis added). In other words, Beemer will be personally liable if W.C.

---

[6]At this stage in the litigation, such assumptions are proper. In analyzing a motion to dismiss, courts must accept all factual allegations in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007).

Beiser willfully violated the Restated Trust and Beemer supervised the completion of report forms, signed such forms, or personally knew of any willful violation.

Although Central's complaint does not explicitly allege *willful* violation of the Restated Trust, its allegations of breach stem from conduct that may be shown as willful upon commencement of formal discovery. *See* Doc. 2, p. 7-¶ 17, p. 15-¶ 17 ("The known amounts owed are based upon the defendant's failure to submit all required reports; failure to accurately state all hours for which contributions are due on reports previously submitted; or its failure to file reports or contributions in a timely fashion."). In further support of the argument that Defendants willfully violated the Restated Trust, the Court notes that Central requested Defendants to perform their obligations under said trust and cure any deficiencies thereunder. And, although Beemer purportedly did not directly supervise the completion of report forms or sign report forms, he may have still had personal knowledge of an ongoing, willful violation of the Restated Trust. Furthermore, the Court need not accept as true Beemer's unverified allegation that, at best, he supervised the office staff that reviewed the relevant report forms.

Put simply, while all of the elements needed to sustain a claim of personal liability against Beemer are not matched with corresponding factual allegations, Central has alleged enough facts to raise its right to relief above mere speculation. As such, Beemer has been put on ample notice of the claim asserted against him individually. This is all that Federal Rule of Civil Procedure 8 and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) require for a claim to survive a motion to dismiss, and Beemer's dismissal motion will be denied accordingly.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** Central's Motion for Default Judgment (Doc. 9). With respect to W.C. Beiser, Central may move again for default judgment after disposition of the action against Beemer individually. Further, the Court **GRANTS** Beemer's Motion to Set Aside Entry of Default (Doc. 11), whereby the Court **VACATES** the Clerk of Court's Entry of Default (Doc. 8) **insofar as it relates to Beemer**. Finally, the Court **DENIES** Beemer's Motion to Dismiss (Doc. 11).

**IT IS SO ORDERED.**
**DATED: April 21, 2011**

<u>s/ J. Phil Gilbert</u>
**J. PHIL GILBERT**
**DISTRICT JUDGE**