IN UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CENTRAL LABORERS' PENSION, WELFARE & ANNUITY FUNDS, <br><br> Plaintiffs, <br><br> v. <br><br> W.C. BEISER CONCRETE COMPANY, INC., *and* KENNETH BEEMER, *individually,* <br><br> Defendants. | Case No. 3:10-cv-00611-JPG-PMF |

## **MEMORANDUM & ORDER**

This matter comes before the Court on defendant Kenneth Beemer's Motion for Summary Judgment (Doc. 28) to which plaintiffs Central Laborers' Pension, Welfare & Annuity Funds ("Central Laborers") filed a response in opposition (Doc. 33). This action is pending against Kenneth Beemer and W.C. Beiser Concrete Company, Inc. ("Beiser"), however, only Beemer has filed for summary judgment at this time.

## **BACKGROUND**

I. Factual

As defendant Beemer has filed for summary judgment, the Court construes the facts in the light most favorable to the non-moving party, Central Laborers. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Central Laborers' Pension, Welfare & Annuity Funds are three separate funds maintained by the Central Laborers to provide various services to laborers within its geographic region. The Pension Fund provides support to retired and active laborers and is supported by negotiated employer contributions negotiated through collective bargaining agreements. The Annuities Plan operates similarly through negotiated employer contributions.

1

The Welfare Fund works with local unions to provide health insurance benefits. These three funds together form the Central Laborers' Pension, Welfare & Annuity Funds which has brought suit. (http://www.central-laborers.com).

W.C. Beiser entered into a Participation Agreement on May 27, 1993 with Central Laborers' to contribute to the funds on behalf of its employees. The Participation Agreement (Doc. 23-1) called for the creation of a trust composed of the Central Laborers' Pension Fund and the Central Laborers' Welfare Fund. Beiser agreed to make monthly contributions to the Funds "(1) on behalf of all Employees…(2) for all jobs within the geographical jurisdiction of the Funds…(3) for the employment on all job classifications…" (Doc. 23-1). The Participation Agreement further bound Beiser to the "Trust Agreements" including the Restated Agreement and Declaration of Trust (Doc. 23-3). The Participation Agreement also required liquidated damages to be paid in the event of non-payment of the required contribution.

Central Laborers allege that from May 1993 to the present, Beiser requested employees from various local labor unions which fall in the geographic jurisdiction of Central Laborers to do work on its construction sites. The employees did the work requested by Beiser but Beiser then failed to make the contributions required and failed to properly report the hours the employees worked. Central Laborers claim upon reviewing its own documents and the records submitted by Beiser, Beiser owes the Funds $24,359.07 which it has so far refused to pay. It further alleges that defendant Kenneth Beemer is personally liable for this amount because he is an employer as defined under ERISA and a signatory to the Participation Agreement.

II. Procedural

Central filed this lawsuit pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA" 29 U.S.C. § 1132, 1145) against W.C. Beiser Concrete Company Inc. and

Kenneth Beemer in his individual capacity on August 12, 2010. Four months later, Central moved for an entry of default against both defendants (Doc. 9). Beiser and Beemer then both filed a motion to set aside default and a motion to dismiss as to Kenneth Beemer (Doc. 11). This Court granted Beiser's motion as to the set aside of default but denied Beemer's motion to dismiss (Doc. 15). On June 2, 2011, Central filed an amended complaint (Doc. 23) which is the controlling pleading in this proceeding. Beemer then filed the present motion for summary judgment (Doc. 28).

In his motion, Beemer argues there is no theory under which Beemer can be held personally liable for the alleged non-payment (Doc. 23). Beemer states the only language giving rise to any potential personal liability is the language in the Restated Trust (Found at Doc. 23-3). The Restated Trust imposes personal liability on the officers of the corporation if an audit discloses a willful violation of trust requirements and the officer "supervised the completion of the report forms, signed report forms or can be determined to have had personal knowledge of such conduct..." (Doc. 23-3, p. 22). Beemer argues there is no evidence to support a willful violation of the trust agreement and even if there were, Beemer did not sign the forms, supervise the employees who prepared them, or have willful knowledge of the alleged wrong. Beemer also argues he signed the Participation Agreement in his capacity as an officer of the corporation.

Central Laborers argue in its Response in Opposition (Doc. 33) that a genuine issue of fact exists as to whether Beemer is personally liable. In support of this, Central Laborers argue Beemer is contractually liable based upon both 1.) the Restated Trust agreement which directly states there is personal liability for a willful violation if the officer signed the form, supervised the signing of the form, or had personal knowledge of the violation and 2.) the Participation Agreement which states the "employer" is liable. In support of this argument, Central Laborers

state Beemer admitted in his motion for summary judgment he knew payment did not accompany the report forms and therefore willingly violated the Restated Trust.

## ANALYSIS

I. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d *687*, 692 (7th Cir. 2000). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the

evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692. As the Seventh Circuit Court of Appeals has repeatedly stated, "summary judgment is the 'put up or shut up' moment in the life of a case." *AA Sales & Assocs. v. Coni-Seal, Inc.*, 550 F.3d 605, 612 (7th Cir. 2008).

In granting summary judgment, a "court may consider any material that would be admissible or usable at trial, including properly authenticated and admissible documents or exhibits." *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir.2000) (quoting *Aguilera v. Cook County Police & Corrs. Merit Bd.*, 760 F.2d 844, 849 (7th Cir.1985) citing *Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir.1985)). The Court further notes it is not its function to "scour the record in search of evidence to defeat a motion for summary judgment." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

II. Standard for Personal Liability

The Court already discussed Beemer's potential for personal liability in its order denying Beemer's motion to dismiss (Doc. 15) but re-examines the issues again now. "Corporate officers who are not parties to a pension plan or a collective bargaining agreement requiring contributions to a pension plan are personally liable for pension contributions only to the extent they are liable for general corporate debts under state corporate law." *Plumbers' Pension Fund, Local 130 v. Niedrich*, 891 F.2d 1297, 1302 (7th Cir. 1989); *Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186, 1194 (7th Cir. 1989). In the context of the claims arising under ERISA § 1445 against an Illinois corporation's director or officer, this typically means that "unless the corporation is acting for and an alter ego of the individual or there exist facts that warrant piercing the corporate veil, the individual will not be held liable for the corporation's obligations . . . ." *Niedrich*, at 1299-1300 (collecting cases and indicating agreement therewith).

5

One way, however, in which a corporation's chief officer may incur liability is if he contractually agreed to accept responsibility for his company's actions (or lack thereof), thereby becoming an "employer who is obligated to make contributions." *See* 29 U.S.C. § 1145 (2006); *Sullivan v. Cox*, 78 F.3d 322, 325 (7th Cir. 1996). Indeed, the Court has seen this very argument meet with success. *Trs. of Cent. Laborers' Pension, Welfare & Annuity Funds v. Allen*, No. 04-cv-4155-JPG, 2007 WL 433543 (S.D. Ill. Feb. 6, 2007) (finding corporate director personally liable after one-day bench trial); *Trs. of Cent. Laborers' Pension, Welfare & Annuity Funds v. Acorn Indus.*, No. 05-cv-4123-JPG, 2006 WL 120275 (S.D. Ill. Jan. 17, 2006) (denying corporate president's motion to dismiss).

Under Illinois law, "[w]hen an officer signs a document and indicates next to his signature his corporate affiliation, then absent evidence of contrary intent in the document, the officer is not personally bound." *Sullivan v. Cox*, 78 F.3d 233, 236 (7th Cir. 1996) (citing *Wottowa Ins. Agency, Inc. v. Block*, 104 Ill.2d 311, 315-16 (1984). However, Illinois courts have also found an issue of material fact to exist even though the defendant signed with the word "President" but the contract itself stated a personal guarantee would later be signed. *Knightbridge Realty Partners, Ltd-75 v. Pace*, 101 Ill. App.3d 49 (Ill. App. Ct. 1984).

III. Analysis

Here, Central has not alleged that W.C. Beiser is the alter ego of Beemer or that the corporate veil of the company can somehow be pierced. Consequently, as the Court found in its prior order (Doc. 15), the only way in which Beemer can be individually liable for his company's failure to contribute pension funds is if he contractually agreed to accept responsibility in his personal capacity.

The Court first examines Central Laborers' argument Beemer is liable under the Participation Agreement as the "employer." Beemer signed the Participation Agreement (Doc. 23-1) as the President of the company which is clearly stated on the signature page of the agreement. There is no sound legal argument that an officer acting in his corporate capacity can be personally liable for obligations of the company solely because he is the "employer." The employer is the company W.C. Beiser Co., Inc., as identified on the Participation Agreement (Doc. 23-1) and on the signature page of an agreement effective August 1, 1998 submitted (incompletely) by Central Laborers (Doc. 23-2). There was no language in the Participation Agreement, nor has Central Laborers cited to any, which would make Beemer personally liable as the "employer" in his personal capacity. The only available theory of liability is, as previously identified by this Court (Doc. 15), that Beemer willfully violated the Restated Trust and Beemer supervised the completion of report forms, signed such forms, or personally knew of any willful violation. The Court turns to this theory now.

Beemer contractually agreed to the terms of the Restated Trust when he signed the Participation Agreement on behalf of W.C. Beiser on May 27, 1993. Specifically, Section 3 of Article IV binds the employer to the Agreements and Declarations of Trust…" (Doc. 23-1). Although Beemer signed the Participation Agreement in his official capacity, this is like *Knightbridge* where the content of the contract, namely the assumption of personal liability, can override the signature in his official capacity. *See Knightbridge,* 101 Ill. App.3d 49. Therefore, under the terms of the Participation Agreement, an officer like Beemer could be held personally liable under the terms of the Restated Trust. Central Laborers allege the violations of the agreement occurred between May 27, 1993 and the present time and thus the Participation

Agreement would have been in effect. The portion of the Restated Trust which possibly implicates Beemer personally states, in pertinent part, as follows:

> Where an audit discloses a difference between hours actually worked by an employee and hours reported to the Trust by his Employer and where such audit discloses any willful violation of any requirements of this Trust Agreement . . . , those officers and directors of such Employer, if a corporation, who supervised the completion of report forms, signed report forms or can be determined to have had personal knowledge of such conduct, shall be personally liable for any underpayment or other pecuniary loss to the Fund as a result of such conduct.

Doc. 2-4, p. 22. In other words, Beemer will be personally liable if W.C. Beiser willfully violated the Restated Trust and Beemer supervised the completion of report forms, signed such forms, or personally knew of any willful violation.

Beemer states in his affidavit he did not have knowledge of the information contained in the reports, sign the reports, or directly supervise the corporation's preparation of reports (Doc. 28-5). He goes on to state, however, the corporation did not make the contributions due "for the months of September through December 2009, because it had insufficient funds to do so." Central Laborers argue this statement is enough to show Beemer had personal knowledge of a willful violation of the Restated Trust. The audit purportedly "disclose[d] a willful violation" of a "requirement of this Trust Agreement," namely, the payment of contributions as required and Beemer had personal knowledge of the violation (Doc. 2-4, p. 22). Under the language of the Restated Trust quoted above, personal knowledge of the willful violation could be sufficient to impose personal liability.

Construing the facts, including those facts from Beemer's affidavit, in a light most favorable to Central Laborers, the statement from Beemer's affidavit could show Beemer had personal knowledge of a willful violation. *See Anderson*, 477 U.S. at 255. Summary judgment requires a "strict burden of proof" and Beemer simply has not offered sufficient proof he did not

8

have personal knowledge. *Cooper*, 969 F.2d at 371. The Court is not ruling on whether Beemer is personally liable for the amount claimed by Central Laborers. Central Laborers did not file a motion for summary judgment and its pleadings do not allege for what time period exactly they are seeking payment (the affidavit discusses only a four month period whereas the complaint states "between May 1993 and the present"). The complaint also alleges forms were filled out falsely which is not addressed in Beemer's affidavit. Beemer does not state if he ever had personal knowledge of forms being filed incorrectly but does say he did not supervise or complete those forms himself. The Court only finds Beemer has not met his burden for summary judgment and therefore summary judgment is denied. *See Cooper*, 969 F.2d at 371.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Kenneth Beemer's Motion for Summary Judgment (Doc. 28).

**IT IS SO ORDERED.**
**DATED:** March 5, 2012

                                                                                               s./ J. Phil Gilbert
                                                                                               **J. PHIL GILBERT**
                                                                                               **DISTRICT JUDGE**